UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Magistrate No.
04M-1128-JGD

UNITED STATES OF AMERICA

v.

MARK ROLFSEMA

# MEMORANDUM AND ORDER ON
GOVERNMENT'S MOTION FOR DETENTION

December 14, 2004

DEIN, M.J.

## I. GOVERNMENT'S MOTION FOR DETENTION

The defendant is charged in a criminal complaint with possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B). An initial appearance was held on December 1, 2004 at which time the government moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A) on the grounds that the defendant is a danger to the community and poses a serious risk of flight. A probable cause and detention hearing was held on December 6, 2004, at which time the defendant was represented by counsel. At the conclusion of the hearing, this court concluded that there was probable cause to find that the crimes as alleged in the complaint had been committed by the defendant. The defendant proposed conditions of release, and agreed to be interviewed by Pre-Trial Services. The court received the Pre-Trial Services report today.

For the reasons detailed herein, this court finds that the government has proved by a preponderance of the evidence that no condition or combination of conditions will assure the defendant's appearance as required, and that detention is appropriate under 18 U.S.C. § 3142(f)(2)(A).

## II. THE BAIL REFORM ACT

A.    Under the provisions of 18 U.S.C. § 3142 ("The Bail Reform Act"), the judicial officer shall order that, pending trial, the defendant either be (1) released on his or her own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained.  See 18 U.S.C. § 3142(a).

Under § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions (set forth under § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . . ," or if the judicial officer finds by a preponderance of the evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ."  See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

B.    The government is entitled to move for detention on grounds of danger to the community in a case that –

(1)    involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);

(2)    involves an offense punishable by death or life imprisonment;

(3)     involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[1] or more; or

(4)     involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses.  See 18 U.S.C. § 3142(f).

C.     In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning --

(1)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2)     the weight of the evidence against the accused;

---

[1]     The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense – not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines.  See United States v. Moss, 887 F.2d 333, 336-37 (1st Cir. 1989).

(3)    the history and characteristics of the person, including --

(a)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(b)   whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4)    the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).[2]

### III.  DISCUSSION OF WHETHER DETENTION IS WARRANTED

"Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant." U.S. v. Tortora, 922 F.2d 880, 888 (1st Cir. 1990), and cases cited.  Based on the record before me, I find that there are no conditions which may be imposed which will reasonably insure the defendant's presence at trial.

### A.  The Offense Charged And Weight Of The Evidence

The defendant is charged with possession of child pornography.  As detailed in the September 23, 2004 affidavit in support of a search warrant, on September 7, 2004, the Boston FBI office received information about an investigation out of the Tuscon, Arizona office regarding the transmission of child pornography through the Internet.

---

[2]    No rebuttable presumptions under 18 U.S.C. § 3142(g) apply in this case.

This investigation, which is described in detail in the Affidavit, identified the defendant as participating in the transmission of child pornography.

As detailed further in the affidavits submitted in support of the criminal complaint and for two search warrants, on September 16, 2004, two law enforcement agents attempted to speak to the defendant at his residence based on a lead received by the FBI in Tuscon, Arizona, that the defendant may have posted images of child pornography to a Yahoo Group.  The defendant refused to speak with the agents but took their business cards.

On September 23, 2004, the agents executed a search warrant at the home where the defendant lives with his daughter, Melanie, and his second wife, Monica. The agents seized approximately 100 computer disks, over 400 floppy disks, over 80 videocassette tapes and various pictures, among other things.  Melanie appeared at the apartment during the search, refused to cooperate and left.  Many of the images on the CDs were found to be of children engaged in sexually explicit conduct.  There was also evidence that the images had been loaded onto and down-loaded from the Internet, and that the defendant participated in chat rooms over the Internet during which discussions of sexual acts with children took place.  No computer was located at the residence, although there were indications that a computer had been there.

On September 24, 2004, the FBI agent investigating the defendant received a phone call from an agent of the Maine Drug Enforcement Agency notifying her that the defendant had been picked up and detained by the Royal Canadian Mounted Police. Apparently after spending several days in Maine asking local residents how to cross

the border without going through Customs, the defendant left his vehicle on the Maine side of the border and headed into the woods to cross into Canada. A search of his car turned up the Agents' business cards.

While in Canadian custody, the defendant sought refugee status. He was visited in Canada by his first wife, Patricia Rolfsema, and was in telephone contact with his second daughter, Jennifer. While he was in custody, Patricia Rolfsema and her two daughters, Jennifer and Melanie, were seen emptying out three storage garages rented by the defendant. A search of the trash revealed a computer P.C. tower from which the hard drive had been forcibly removed. Several days later, on October 24, 2004, the defendant's current wife, Monica Rolfsema, removed other items from the garages rented by the defendant. A subsequent search of the garages by the FBI located several computers and videotapes which are being reviewed.

Based on the information contained in the various affidavits submitted to the court, the case against the defendant for possession of child pornography appears strong.

## B. History And Characteristics Of The Defendant

The defendant, age 52, was born in Philadelphia, Pennsylvania on August 28, 1952. He has lived in Massachusetts for 20 years. The defendant was married to Patricia Rolfsema for 23 years. They have two children: Melanie, age 22, who lives in Andover; and Jennifer, age 25, who lives with Patricia. The defendant married his present wife, Monica, age 43, approximately 3 years ago. She has two sons. Monica is Brazilian and entered this country on a visa, which has expired. Therefore, she is in

this country illegally.  Prior to his marriage to Monica, the defendant lived with his daughter, Melanie, for a number of years.  He has also been living with her since at least June 2004.  Their apartment is federally subsidized through HUD, and eviction proceedings have been started by HUD.  The defendant, Monica and her two sons were scheduled to move into a Habitat for Humanities home at the time of his arrest.

The defendant's first wife, Patricia, lives in Rhode Island.  She has volunteered to have the defendant live with her if he is released.  The defendant's second wife, Monica, lives in an apartment in Lowell, Massachusetts.  She is also willing to have the defendant live with her and her two sons if he is released.

The defendant graduated from High School in Philadelphia, Pennsylvania in 1970.  He has a Bachelor of Science Degree in Religion from Houghton College, located in Houghton, New York.  In 1978, he received a Master's of Divinity Degree from the Eastern Baptist Theological Seminary.  He has been employed as an assistant to a photographer who takes pictures for children's yearbooks, as a youth minister at a Methodist church, and as a Field Representative/Surveyor for the United States Census Bureau.  That work, which paid $12/hour, terminated in June 2004.

The defendant receives monthly Social Security Disability payments and owns 171 acres of land in Newport, Vermont, which is presently for sale.  He has transferred ownership of the land to his daughter, Jennifer.

The defendant's parents live in New Jersey, and his father is terminally ill.  The defendant has a brother who lives in Connecticut.

The defendant has a back disorder and suffers from arthritis to his right leg. He has allergies and a pre-glaucoma condition which require periodic medical attention. He was previously treated for an anxiety/panic disorder, but feels he is no longer in need of counseling.

The defendant was arrested in December 2002 for shoplifting. The matter was continued without a finding and dismissed. The defendant has no other criminal record.

### C. Risk of Flight

This court concludes that the government has proved by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings. The defendant fled the country upon learning of the investigation, and sought refugee status in Canada. While he has supportive family in this area in his two daughters and his former and present wives, they have all assisted him in attempting to destroy evidence which may be relevant to the investigation. Moreover, the defendant's present wife seems to be in this country illegally, and his daughter, Melanie, is in the process of being evicted. The defendant's first wife visited him in Canada, indicating to the court that travel outside the country is not a problem for the defendant's family. The defendant does not have any steady employment which would insure his continued presence in Massachusetts. In short, the defendant's conduct and the conduct of his family demonstrates to this court that there are no conditions of release which will reasonably assure this court that the defendant will appear as required. The risk of flight is very high.

# IV. <u>ORDER OF DETENTION</u>

IT IS ACCORDINGLY ORDERED that the defendant be DETAINED pending trial, and it is further Ordered --

(1)    That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2)    That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3)    On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.


_____/ s / Judith Gail Dein_____
Judith Gail Dein
United States Magistrate Judge