```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS

UNITED STATES              )
                           )
     v.                    )    Criminal No. 05-10030-PBS
                           )
MARK ROLFSEMA               )
```

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States submits this sentencing memorandum in support of its sentencing calculation in the above referenced case.

## Background

On September 23, 2004, the Federal Bureau of Investigation executed a search warrant on the defendant's residence in Andover, Massachusetts, based on information that the defendant had been distributing child pornography over the Internet. During the search of the defendant's residence, law enforcement officers seized approximately 100 CDs, over 400 floppy disks, over 80 videocassettes, and printed material, including a graphic picture of a baby's vagina spread open.[1] Immediately following the execution of the search warrant the defendant fled the state and, after changing his appearance, was arrested in Canada where he sought refugee status. Subsequently, the defendant was indicted in Massachusetts on February 9, 2005, for possession of

---

[1] No computer was found during the search. Notably, the search warrant followed, by a few days, the agents' attempt to get the defendant to consent to a search.

1

child pornography.

On June 6, 2005, the defendant pled guilty to the possession charge without a plea agreement, and sentencing was set for September 7, 2005. Prior to the sentencing date, the Probation Officer issued a pre-sentence report finding a number of enhancements pursuant to the applicable sentencing guidelines, including enhancements for images depicting pre-pubescent minors, use of the computer, and for possessing more than 600 images. The Probation Officer, however, determined that the government had not yet conducted a sufficient investigation to find a two level enhancement for 10 or more "items."

At the sentencing hearing, the defendant informed the Court that he wished to change counsel, and perhaps withdraw his plea, based on alleged mis-representations by his counsel.  The Court allowed the defendant time to decide whether to withdraw his plea, and the government subsequently informed the Court that, although there was no legal deficiency in the plea colloquy, the government would not object to the defendant doing so.  Two weeks later, the defendant informed the Court that he wished to keep his plea of guilty, but file additional objections to the sentencing report.

Also during the sentencing hearing of September 7, 2005, the government informed the Court that it believed that a two level enhancement pursuant to U.S.S.G. 2G2.4(b)(2) might be duplicative

to a five level enhancement provided by U.S.S.G. 2G2.4(b)(5)(D). In response, the Court provided the government with an 11th Circuit citation which appeared to find to the contrary. The Court also noted its concern with the government's position that the two level enhancement of (b)(2) encompassed individual images, and it noted that the Probation Officer required additional evidence for the number of images enhancement. The government informed the Court that it would be looking further at the number of images.

Before the defendant informed the Court that he was going to keep his plea of guilty, the government conducted an additional examination of the images possessed by the defendant. That examination confirmed the number of images for purposes of the enhancement and showed a number of images that qualified as sado-masochistic conduct. The government promptly informed Probation and defense counsel of this fact.

### Government's Sentencing Calculation

The defendant's base offense level is 15. See U.S.S.G. 2G2.4. In addition to the base offense level, the government submits that a number of enhancements apply to the defendant's conduct in this case.

1. <u>2-Level Enhancement Under 2G2.4(b)(1).</u>

A 2-level enhancement is warranted if a defendant possessed material that depicts a prepubescent minor. See U.S.S.G.

2G2.4(b)(1).  Although courts have found that one image depicting a prepubescent child is sufficient to apply the enhancement, <u>see</u> <u>U.S. v. Fox</u>, 248 F.3d 394 (5th Cir. 2001), in fact the defendant's material included numerous images of children under the age of 12.  A sample of those images will be available for the Court at the sentencing hearing.

    2.   <u>2-Level Enhancement Under 2G2.4(b)(2).</u>

A 2-level enhancement is applicable if the offense before the Court involved "10 or more items."  <u>See</u> U.S.S.G. 2G2.4(b)(2). The case law is clear that each individual image constitutes an "item" for purposes of this enhancement.  <u>See</u> <u>U.S. v. Hilton</u>, 257 F.3d 50 (1st Cir. 2001) (applying that analysis and noting that every circuit to address the issue has found that one image equals one item).  At the September 7, 2005, hearing, the Court expressed hesitation as to whether the Court would qualify each image as an item.  Although the government believes the case law is to the contrary, the government conducted additional investigation to provide information to the Court that in addition to more than 10 images, the defendant in this case possessed more than 10 separate CDs that each contained child pornography.

    3.   <u>2-Level Enhancement Under 2G2.4(b)(3).</u>

A 2-level enhancement applies if the defendant's possession of the material resulted from the defendant's use of a computer.

4

See U.S.S.G. 2G2.4(b)(3). The government identified a number of images that contain watermarks, indicating that they originated from websites. Those images will be available for the Court at the sentencing hearing. In addition, the defendant's collection was maintained on CDs, further evidencing his use of the computer. Finally, the defendant was originally targeted because of his distribution of images over the Internet.

    4.   4-Level Enhancement Under 2G2.4(b)(4).

A 4-level enhancement applies if the offense material portrays sadistic or masochistic conduct (S&M). See U.S.S.G. 2G2.4(b)(4). Although courts have found that two images depicting S&M, out of hundreds of images, is sufficient to apply the enhancement, here again the defendant had numerous images that qualify for this enhancement. Courts have found that images depicting penetration of a child's vagina qualify for this enhancement. See U.S. v. Garrett, 190 F.3d 1220 (11th Cir. 1999). The defendant possessed a number of images depicting that conduct, as well as images of children in bondage and children engaged in sexual activity with animals. Those images will be available for the Court at the sentencing hearing.

Unencumbered by legal support, the defendant now claims that he should not be subject to the 4-level S&M enhancement because those images were found during the period in which the defendant requested a continuance in order to consider withdrawal of his

5

guilty plea. The government could find no case which limits the information the Court should consider at sentencing to that information known on a particular sentencing date. Indeed, the government suggests it would be misconduct to withhold relevant information from a sentencing judge.

In addition, in this particular case, both the Court and the Probation Officer noted that the FBI had not fully examined the evidence, thus making it difficult for Probation and the Court to determine the number of images possessed by the defendant. In response to that concern, the government re-examined the defendant's collection and discovered the S&M images, which are clearly relevant to the defendant's offense conduct.

That the defendant now claims a harm from the discovery of the S&M pictures is particularly ironic given that the defendant himself was the one person who had definitive knowledge at the original sentencing date that he in fact possessed those images. In other words, the defendant was receiving an undeserved benefit from the fact that the government had not yet discovered those pictures. The fact that the government has now found the very images that the defendant knew existed in no way creates a harm to the defendant.

   5.   5-Level Enhancement Under 2G2.4(b)(5)(D).

A 5-level enhancement is applicable if the defendant possessed 600 or more images of child pornography. See, U.S.S.G.

2G2.4(b)(5)(D). The Probation Officer expressly found that the defendant's collection of child pornography numbered over 600, and the FBI agent will be available to testify at the sentencing hearing that the collection in fact numbered in the thousands of images. The 11th Circuit has found that the imposition of the 2-level enhancement in (b)(2) and the 5-level enhancement in (b)(5)(D) does not constitute double jeopardy. U.S. v. Lebovitz, 401 F.3d 1263 (11th Cir. 2005). However, given the fact that later editions of the sentencing guidelines contain only one such enhancement, the government acknowledges that the 5-level enhancement and the 2-level enhancement *may* create an appellate issue of double counting. For that reason, the government believes that the 5-level enhancement, but not the 2-level enhancement, should be applied.

   Defendant correctly notes that the government had suggested the possibility that the Rule of Lenity might preclude the use of the 5-level enhancement over the 2-level. Further research, however, has failed to support that idea. The Rule of lenity is a rule of statutory construction that applies when there is "grievous ambiguity in a penal statute." U.S. v. Councilman, 418 F.3d 67, 83 (1st Cir. 2005). Indeed, the rule applies only when the Court can do no more than "guess" as to Congress' intent. Id. There is no evidence that the guideline at issue here is grievously ambiguous. Indeed, at least one court has found that

the two enhancements should simply be applied. Defendant's argument is less one for application of the Rule of Lenity, then it is a complaint that he simply believes the guidelines are "unfair."

The government notes that subsequent versions of the guidelines retained the 5-level enhancement for number of images, strongly evidencing congress' intent that the (b)(5)(D) enhancement be applied. The government could find no published opinion where a court declined to apply the 5-level enhancement in favor of the 2-level enhancement. While the defendant understandably would like to have it both ways - rely on the later versions of the guidelines for the proposition that both enhancements don't apply, but don't rely on the same later guidelines for the proposition that the 5-level enhancement applies - the government suggests that such a position is contradictory at best. The government requests application of the 5-level enhancement for the defendant's possession of 600 or more images of child pornography.

6. Departures

The defendant in this case requests a downward departure based upon an unverified medical condition and his alleged vulnerability to abuse while incarcerated. In support of that claim, the defendant cites to three cases; notably, each of the cases relied upon by the defendant is clearly distinguishable.

8

In U.S. v. Graham, 83 F.3d 1466 (D.C. Cir. 1996) for example, the D.C. Circuit found that extreme vulnerability to abuse in prison might warrant a downward departure, but clarified that extreme vulnerability meant an individual who could show that he could only be safe if placed in solitary confinement.  The defendant in this case has simply not made such a showing.  Likewise, the 9th Circuit in U.S. v. Parish, 308 F.3d 1025 (9th Cir. 2002) departed downward, but did so because of the nature of the facts of that case.  In Parish, the defendant was charged with possession of child pornography based solely on images discovered in his temporary cache file.  The court emphasized that the defendant in Parish had never affirmatively saved an image of child pornography.  In contrast, Mr. Rolfsema has saved thousands of images of child pornography, and was in fact discovered by the FBI because of his active distribution of child pornography.  Finally, in U.S. v. Long, 977 F.2d 1264 (8th Cir. 1992) the 8th Circuit affirmed a downward departure because of the defendant's extreme physical impairment - an impairment that was testified to and confirmed by four medical doctors.  In contrast, the defendant before the Court has put forward no affirmative evidence from qualified experts that he has any mental or physical condition that would qualify him for such a downward departure.  See U.S. v. DeBeir, 186 F.3d 561 (4th Cir. 1999) (defendant's unique psychological condition, not being a

9

pedophile and susceptibility to abuse in prison not grounds for downward departure); U.S. v. Peterson, 2003 WL 22952189 (8th Cir. Dec. 15, 2003)(susceptibility to abuse in prison not a grounds for departure).

In contrast to the defendant's argument for a downward departure, the defendant's conduct in this case warrants consideration of an *upward departure*. The U.S.S.G. explicitly note that "if the offense involved a large number of visual depictions, an upward departure may be warranted, regardless of whether subsection(b)(2) applies." U.S.S.G. 2G2.4. Mr. Rolfsema possessed thousands of images of child pornography on every kind of media, including CDs, floppy disks and printed images. He was discovered by the FBI because he was transmitting images of child pornography over the Internet. If any departure is warranted in this case, an upward departure is certainly the more appropriate course.

For the reasons stated above, the United States submits that the defendant's sentencing calculation under the U.S.S.G. is 25, 57-71 months.

Respectfully submitted,
MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

/s/Dana Gershengorn
DANA GERSHENGORN
Assistant U.S. Attorney
617-748-3120

December 8, 2005.